In the Matter of Mary Jane LEE, individually and doing business as "The Breakers."

O. W. IRWIN, Trustee in Bankruptcy, Appellant,

v.

UNITED STATES of America, Appellee.

No. 25063.

United States Court of Appeals, Ninth Circuit.

Aug. 28, 1972.

Rehearing Denied Sept. 22, 1972.

Vernon D. Stokes (argued), James M. Conners, San Francisco, Cal., Harold C. Kruse, Monterey, Cal., Donald G. Hubbard, of Thompson & Hubbard, Monterey, Cal., for appellant.

John M. Youngquist, Asst. U. S. Atty. (argued), James L. Browning, Jr., U. S. Atty., San Francisco, Cal., Lee A. Jackson, Crombie J. D. Garrett, Attys., Johnnie M. Walters, Asst. Atty. Gen., Washington, D. C., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and JAMESON,* District Judge.

CHAMBERS, Circuit Judge:

We have here a contest over the proceeds ($14,093.37) of the sale of a California liquor license used at a restaurant operated by Mary Jane Lee and her sister Betty Jean Parker in Monterey, California, known as "The Breakers."

The government has a claim for estate taxes due from the estate of Donald Roy Bailey. For this, Mrs. Lee and her sister as co-administratrices are personally liable. Bailey was the father of Mrs. Lee and Mrs. Parker.

In 1961 Bailey owned a motel in Pacific Grove. He transferred it to Mrs. Lee subject to a first trust deed held by a third party. The sole consideration was a purchase money second trust deed in the amount of $25,500. (That is, this was the balance due at the time of his death in 1962.)

Soon after the father's death, the sisters began their restaurant business, unconnected with the motel. A liquor license was needed. This required money. To raise the money, Mrs. Lee obtained a loan in the amount of $29,000 on her equity in the motel by giving a third trust deed as security. At the time she obtained this loan, the entire amount of the note secured by the second deed of trust in favor of Bailey's estate was due and payable.

Out of the proceeds of this loan, a liquor license was purchased for "The Breakers" for $12,000. The balance was used up in operating the restaurant.

Needing still more money, Mrs. Lee, in her capacity as administratrix of her father's estate, demanded that the trustee under the second deed of trust reconvey his title to Mrs. Lee as owner of the motel. This he did. She had represented to the trustee that the debt which she and her sister owed had been paid. Others were now willing to make loans against the motel subject to the two trust deeds now appearing on the record to be outstanding. Two further loans were obtained and the proceeds were consumed in the operation of "The Breakers." Of course, Mrs. Lee did have a duty with the proceeds of any such loans, or with any other property she had, to pay off the note secured by the original second trust deed. Estate of Walker, 125 Cal. 242, 57 P. 991 (1899).

The government contends for a lien for its death duties against the liquor license and against the proceeds of the sale of the license by the trustee in bankruptcy for Mrs. Lee. If there was a lien against the license, the proceeds would naturally go to the government. The government asserts a trust ex maleficio—a constructive trust. The referee in bankruptcy held that there was no lien, but the district court reversed.

We are not satisfied there was a constructive trust. Of course, Mrs. Lee has no right to the money, but we hold that the United States is only entitled to its ordinary fourth priority.

If the administrators had sold the second note and trust deed which represented their debt to their father's estate and had used the proceeds to buy a liquor license for themselves, we would have no trouble affixing a lien on the liquor license and on the proceeds. But here, with a mere failure to pay a debt owed, we have a gap in any "tracing of a res." When one initially qualifies as an administrator, one's personal assets are not subjected to a lien for all estate debts, and thereafter are not so subjected automatically.

---

* The Honorable William J. Jameson, United States District Judge for the District of Montana, sitting by designation.

Probably the "lien" of the original second trust deed remained on the motel after the fraudulent reconveyance, at least as between Lee as owner of the motel and Lee and Parker as administrators, but that lien has undoubtedly been lost by a bona fide purchase. It lasted through, we would say, until the sale of the motel. We do not see how we can say a lien arose on the proceeds of the first loan which Mrs. Lee herself obtained. We do not think the lien could have been imposed if the debtors and administrators had not been identical. We are not persuaded that a different rule should apply here.

Allowing a constructive trust here would give the government a first priority. It in effect would amount to a state created priority. This is not a proper use for the remedy of constructive trust. United States v. Randall, 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971); Lusk Corporation, et al. v. Arizona State Tax Commission, 462 F.2d 187, (9th Cir. 1972).

We do not reach the question of what the rule would be if we had a simultaneous transaction of "releasing" the estate's second deed of trust and putting on a new deed of trust, the proceeds of which were used to purchase a liquor license.

The order of the district court is reversed.

BARNES, Circuit Judge, dissenting:

I dissent, and would affirm the District Court. The facts are undisputed. The trial court found, applying California law:

"III. The Court concludes from the facts as found herein, applying California law to the question in issue:

A. That the bankrupt breached her trust and fiduciary duty as administratrix of the decedent's estate when in March and early April of 1963, prior to her bankruptcy, she used the cash sum of $12,000, out of a total cash sum of approximately $25,000 in her hands at that time, to purchase the subject state liquor license for her own personal business use and thereby failed to pay over to the decedent's estate out of said cash sum her personal debt to the estate which was then due, owing and payable in the like amount of approximately $25,000 and which sum she then held in hand and could have paid to the estate; and

B. That, upon the facts and law, justice and equity compel the Court to recognize that the subject liquor license was held by the bankrupt, at the time of bankruptcy, as a trustee *ex maleficio* for the decedent's estate as *cestui que trust,* that said license was accordingly not an asset belonging to the bankrupt nor subject to administration in these bankruptcy proceedings, and that the involuntary and constructive trust for the benefit of the decedent's estate should now be enforced against and to the extent of the proceeds from the sale of said license now remaining in the hands of the bankruptcy Trustee. California Civil Code §§ 1573 and 2224; California Probate Code, § 920. Estate of Walker, 125 Cal. 242, 57 P. 991 (1899); In re Loheide's Estate, 17 Cal.App. 475, 120 P. 56 (1911). Cf. In re Newcomb Interests, Inc., 171 F.Supp. 704 (N.D.Calif.1959), affirmed, *sub nom.* Huffman v. Farros, 275 F.2d 350 (9th Cir. 1960)."

This case is controlled, as the government urges not by tax law, nor bankruptcy law, but the California law of constructive trusts.

Section 2224 of the California Civil Code states:

" * * * One who gains a thing by fraud, accident, mistake, undue influence, *the violation of a trust,* or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it." [Emphasis added.]

The applicability of this equitable rule to the present case is clear upon its face. The bankrupt-administratrix violated "a trust" (Estate of Walker, 125 Cal. 242, 57 P. 991 (1899)) and thereby gained "a thing (the liquor license) which otherwise" (if she had performed her fiduciary duty and paid over the $25,000 toward discharge of her debt) the estate would "have had" (to the extent of the $12,000 paid for the license). She therefore must be held, as the district court held, to be the constructive trustee of the license for the benefit of the estate, and her trustee in bankruptcy (appellant here) has no "better right thereto."

The language of In re Loheide, 17 Cal.App. 475, 120 P. 56 (1911), is here applicable:

> "The only excuse tendered in the case here is that he [the administrator] would have had to sacrifice his private business in paying the note. But *his primary duty was to the trust he had assumed. He was not authorized to show favor to himself as a debtor to the estate greater than to any other person. He had no right to use the credit of the estate to promote his personal gain* or to maintain a business which might suffer if he drew out of his capital enough to pay what he owed the estate." [Emphasis added] *Id.* at 483, 120 P. p. 59.

See also California Civil Code, § 1573, and Cardozo v. Bank of America, 116 Cal.App.2d 833, 254 P.2d 949 (1953), where constructive fraud by an innocent executrix rendered her liable. (p. 837 et seq., 254 P.2d 949)

See also Elliott v. Bumb, 356 F.2d 749 (9 Cir. 1966), where this Court held the constructive trust funds, "in existence and clearly identifiable", were part of the estate—while commingled funds were not. In *Elliott*, the matter was remanded to trace the sources of the commingled funds; here the tracing was an accomplished fact in the lower court, as found by the trial judge. Such finding is not clearly erroneous as a matter of law or fact.