[Civ. No. 47804. Second Dist., Div. One. Oct. 6, 1976.]

CHARLES WM. RICHION et al.,
Cross-complainants and Appellants, v.
RICHARD MAHONEY et al., Cross-defendants and Respondents.

## COUNSEL

Svenson & Garvin and Christopher C. Jones for Cross-complainants and Appellants.

Edwards, Edwards & Ashton and Jerry K. Staub for Cross-defendants and Respondents.

## OPINION

**HANSON, J.**—Charles Wm. Richion and eight other individuals (hereinafter referred to collectively as Richion), cross-complainants and interveners in the original action between Windsor Sales, a partnership formed by Richard and Robert Mahoney (the parties hereinafter referred to collectively as the Mahoneys) and defendants New Life Management, Inc. (hereinafter referred to as New Life) and Union Bank (hereinafter referred to as Bank), appeal from orders of the trial court awarding payment of the funds in dispute to the Mahoneys.

The instant appeal arises out of the conflicting claims of Richion and the Mahoneys to the same fund, an account at Bank standing in the name of New Life.

### THE FACTS

On April 24, 1973, the Mahoneys entered into a written contract whereby they agreed to act as nonexclusive sales agents for New Life in the solicitation and sale of commodity option contracts to the general public. Under the terms of this agreement, the Mahoneys were to deposit funds obtained from their customers as the proceeds of their sales into an account designed by New Life at Bank's Lake Street, Pasadena, branch. These funds were to be used by New Life to purchase commodity option contracts to complete the transactions for the Mahoneys' customers.

On or about June 11, 1973, the Mahoneys filed a complaint for breach of fiduciary duty and imposition of constructive trust against New Life and Bank attaching thereto as an exhibit a copy of the written agreement. The Mahoneys alleged, inter alia, that New Life had made unauthorized withdrawals from the Bank account for purposes not

specified in the written agreement, as a result of which the Mahoneys were damaged in the sum of approximately $70,000, said sum being due to their customers. The Mahoneys further alleged that Bank still held in the New Life bank account funds which belonged to the Mahoneys and their customers, and that Bank had refused to return said funds despite their formal demand. On or about June 22, 1973, the Mahoneys filed a first amended complaint, together with a declaration and points and authorities seeking, in addition to damages, a preliminary injunction to prevent Bank from releasing any of the funds being held in the New Life account. On July 13, 1973, the court issued a restraining order against all parties to prevent disbursing any funds from that account until conclusion of the Mahoneys' action. On July 18, 1973, a cross-complaint in interpleader was filed by Bank against the Mahoneys and New Life requesting that those parties be required to litigate between themselves their claims to the funds being held in the New Life account.

Meanwhile, Richion on June 13, 1973, filed an action against New Life. In that action Richion alleged that between March 14, 1973, and May 29, 1973, New Life had become indebted to Richion for breaches of contract, money had and received, accounts stated, conversion, fraud and conspiracy in the total sum of over $20,000. On June 14 a writ of attachment was issued ex parte on behalf of Richion in that action and on July 16 the sheriff served a copy of said writ on the operations officer for Bank's Lake Street, Pasadena, branch. The Bank on July 25, 1973, filed their answer stating that they were holding a New Life bank account with a balance of $10,853.72 pursuant to said writ.

On December 18, 1973, Richion obtained a judgment against New Life for the sum of $81,047.26 plus costs. Pursuant thereto Richion on January 11, 1974, obtained a writ of execution and promptly levied on the New Life account at Bank's Lake Street, Pasadena, branch.

On or about January 24, 1974, Bank responded by letter to counsel stating that Bank had been served with the writ; that funds on deposit in the New Life account were subject to litigation in the Mahoneys' action; and that Bank had filed therein a cross-complaint in interpleader seeking an order to deposit the funds with the court. On or about March 8, 1974, Richion filed a motion to establish a lien on any funds that might become due to New Life and a motion for intervention by Richion into the Mahoneys' action. Accordingly, the court granted leave for Richion to file a cross-complaint in intervention.

That cross-complaint alleged the foregoing facts and further alleged that Richion's lien relating back to the date of the attachment was prior and superior to any claims against said funds asserted by the Mahoneys; Richion prayed the court to issue its order releasing the funds being held by Bank to the sheriff pursuant to their writ.

The Mahoneys filed no opposition to the cross-complaint in intervention and on June 28, 1974, Richion filed a request to enter their default. At the hearing on default the court received the documentary evidence. The court thereupon ordered that the preliminary injunction of July 13, 1973, be amended to exempt Richion and that Bank release said funds in accordance with the Richion writ. Notice of entry of judgment was mailed to the attorneys for the Mahoneys on August 13, 1974.

On September 30, 1974, Bank filed a motion to be discharged (Code Civ. Proc., § 386). Pursuant thereto, by its orders of October 25 and November 8, 1974, the court ordered Bank to deposit all funds being held by it in the New Life account with the county clerk, and that the lien of the Mahoneys established by order of March 29, 1974, should constitute a lien on those funds in the hands of the county clerk. On December 9, 1974, Richion made a motion for payment of funds deposited in the interpleader action on the grounds that Bank had been discharged and Richion had obtained a judgment. The motion was denied by order dated December 24, 1974, without prejudice to renewal by Richion after any final judgment in the principal action in which the Mahoneys sought to establish a constructive trust on the funds.

The Mahoneys on February 5, 1975, obtained a judgment by default against New Life. On June 10, 1975, the Mahoneys made a motion, and on June 17 Richion made a similar motion, both claiming the right to payment of the funds deposited by Bank in the interpleader action. The court ordered the clerk to release and return to the Mahoneys the sum deposited by Bank; the Richion motion was denied. On August 1 Richion appeals from the orders of December 24, 1974,[1] and June 27, 1975.

ISSUE

■    Appellants Richion contend that the court erred in ordering payment of funds in the New Life bank account to the Mahoneys

---

[1]The attempted appeal from the order of December 24, 1974, is dismissed.

because as between judgment creditors the lien of Richion was prior and superior to that of the Mahoneys.

## DISCUSSION

In raising their claim of superior right appellants Richion misconstrue the character of the Mahoneys' claim to the New Life account.

Richion's view of the law is accurate as to attaching judgment creditors. (*Bank of South San Francisco* v. *Pike* (1921) 53 Cal.App. 524 [200 P. 752].) The Mahoneys have consistently conceded that legal issue. Their claim, however, is one of an ownership interest in the funds which were deposited in the New Life account for the limited purpose of procuring option contracts purchased by customers of the Mahoneys. It was determined by judgment of the superior court that funds in the New Life account did not belong to that company but were held on constructive trust for the Mahoneys. Therefore, New Life was not justly entitled to these funds but held them for the benefit of the Mahoneys (*Blair* v. *Mahon* (1951) 104 Cal.App.2d 44, 50 [230 P.2d 832]).

In the present case the controlling question is whether judgment creditors may take property standing in the name of the judgment debtor which he holds merely as trustee for another. An attaching creditor seeking to subject the property of a debtor to payment of his debt obtains a lien only upon the title or interest the debtor has and where no actual interest is shown the attaching creditor gets nothing. (*Henry* v. *General Forming, Ltd.* (1948) 33 Cal.2d 223, 225-226 [200 P.2d 785].) It is well established that property held by the debtor in trust is not subject to attachment for his debts. (*Nishi* v. *Downing* (1937) 21 Cal.App.2d 1 [67 P.2d 1057].)

The court's order of June 1975 directing payment of the funds to the Mahoneys is affirmed.

Wood, P. J., and Lillie, J., concurred.